IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID V. RAUTERKUS and ) | |
| MARIA RAUTERKUS, ) | C.A. No. 1:19-CV-240 |
|     Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, by and ) | |
| through TOM VILSACK[1], in his official ) | Re: Motion to dismiss |
| capacity as Secretary of the Department of ) |     ECF No. 46 |
| Agriculture; NATURAL RESOURCES ) | |
| CONSERVATION SERVICE; and ) | |
| DENISE COLEMAN, in her official ) | |
| capacity as State Conservationist (for the ) | |
| Commonwealth of Pennsylvania) with the ) | |
| Natural Resources Conservation Service, ) | |
|     Defendants. ) | |

**MEMORANDUM OPINION**

**U.S.D.J. Susan Paradise Baxter**

**I.   Procedural History**

Pending before this Court is Defendants' motion to dismiss the amended complaint. ECF No. 46.

Plaintiffs David and Maria Rauterkus, owners of real property, initiated this civil action by filing a complaint for declaratory and injunctive relief. ECF No. 1. As Defendants to this action, Plaintiffs name the United States by and through Sonny Perdue, in his official capacity as the Secretary of the Department of Agriculture; the Natural Resources Conservation Service

---

[1] As of February 24, 2021, Tom Vilsack became the Secretary of Agriculture. Pursuant to Federal Rule of civil Procedure 25(d), this Court has substituted Secretary Vilsack for former Secretary Perdue.

1

("NRCS"); and Denise Coleman in her official capacity as State Conservationist with the NRCS.[2]

This case arises out of a voluntary easement executed between the Rauterkuses and the United States pursuant to the federal Wetlands Reserve Program[3]. After the Easement was signed, differences arose between the parties as to the type and scope of the conservation activities to occur on the property. Plaintiffs raise four legal claims[4]: Counts I and II arise out of § 706 of the Administrative Procedure Act, Count III arises under the Quiet Title Act, 28 U.S.C. § 2409a, and Count IV is a claim of anticipatory trespass.

The complaint, along with a motion for temporary restraining order/preliminary injunction, was filed on August 23, 2019. Plaintiffs' motion for preliminary injunction sought to have this Court issue a preliminary injunction "with regard to all restoration, protection, enhancement, maintenance, and management actions and activities set to commence on the property subject to the Warranty Easement Deed in Perpetuity, Wetlands Reserve Program Easement No. 662D3711447." ECF No. 8, page 3. Following an evidentiary hearing on the matter, this Court denied the motion for preliminary injunction concluding that Plaintiffs had not

---

[2] The NRCS is an agency of the United States within the Department of Agriculture.

[3] The Wetlands Reserve Program was repealed effective February 7, 2014. Yet the validity and terms of all contracts, agreements, or easements entered into by the Secretary of Agriculture under the WRP before that date, and all payments required to be made in connection with such contracts, agreements, or easements, are not affected the repeal. *See* Fed. Proc., § 34:1110.

[4] Although not specifically pled, the amended complaint reflects a strong undercurrent of fraudulent inducement. *See*, *for example,* ECF No. 39, ¶ ¶ 43-46. Any action sounding in fraud must be pled with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 9(b) (providing that, with respect to "allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally"). Here, no fraud-based action is pled.

2

met their burden to show the likelihood of success on the merits or irreparable injury. ECF No. 36.

An amended complaint was filed and Defendants have moved to dismiss it. As the dispositive motion is fully briefed, it is ripe for disposition by this Court. *See* ECF Nos. 47, 50, and 52.

## II.     Standards of Review

### A.  Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Rule 12(b)(1) addresses the "very power [of the court] to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Because Plaintiffs administrative remedies the parties asserting jurisdiction, they bear the burden of showing that their claim is properly before the court. *See Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.,* 54 F.3d 156, 158 (3d Cir. 1995).

When addressing a jurisdictional challenge, a court must first distinguish between two types of rule 12(b)(1) motions: those that involve facial attacks and those that involve factual attacks. A facial attack is "an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). When reviewing a facial attack, the court must accept as true the factual allegations and construe them in the light most favorable to the plaintiff. *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012). In other words, the court must apply the same standard of review that it would use in considering a motion to dismiss under Rule 12(b)(6). *Aichele*, 757 F.3d at 358.

Alternatively, a factual attack is an argument that subject matter jurisdiction does not exist "because the facts of the case … do not support the asserted jurisdiction." *Aichele*, 757 F.3d at 358. For factual attacks, court can consider evidence outside the proceedings and the allegations contained in the complaint are not presumptively true. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). Because a factual attack requires a factual dispute, the party asserting the challenge must file an answer or otherwise preen competing facts. *Mortensen*, 549 F.2d at 892 n.17 ("factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted."); *Aichele*, 757 F.3d at 358.

### B. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) recognizes a defense based on a plaintiff's failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm's*, 894 F.3d 509, 526-27 (3d Cir. 2018) (internal quotations and citations omitted). To survive dismissal, "a complaint must contain sufficient factual mater, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "as a general matter, a district court ruling on a motion to dismiss may not consider extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without

4

converting the motion to dismiss into one for summary judgment." *Id*. (internal quotation omitted).

### III.     The Factual Allegations of the Amended Complaint

Plaintiffs David and Maria Rauterkus are the owners of approximately eighty (80) acres of real property in Crawford County, Pennsylvania. They have owned the property for thirty years and have maintained it in a manner sufficient to allow avian wildlife and vegetation to flourish. ECF No. 39, ¶¶ 18-21. During their ownership of the property, the Rauterkuses participated in two government programs to convert portions of the farmland into wetlands. This included the Partners program with U.S. Fish and Wildlife Service, as well as the Conservation Reserve Enhancement Program. *Id.,* ¶ 23.

Around July 2010, the NRCS approached Plaintiffs about enrolling their property in the Wetlands Reserve Program, the purpose of which is to restore, protect, or enhance wetlands on eligible private land. *Id*. ¶¶ 11, 27. Plaintiffs met with NRCS representatives to discuss the manner in which Plaintiffs had previously maintained and managed their Land. *Id*., ¶ 28. One of the NRCS representatives, Lew Walker, advised Plaintiffs that they could play an active role and meaningfully participate in the planning, management, and operation of the restoration activities on their land. *Id*., ¶ 29.

Based on the representations of the NRCS officials, Plaintiffs enrolled their property in the program on July 22, 2010. *Id*., ¶ 33. There is a lengthy process between enrollment in the program and finalization of the restoration work. During this period, there is an off-ramp if the parties cannot agree as to the scope of the restoration work. According to the WRP Manual, after a property is enrolled, the NRCS must provide a preliminary Wetlands Reserve Plan of

5

Operations ("WRPO" or "operations plan") to the landowners and the landowners must agree to it. *Id*., ¶ 12. The Manual explains that the purpose of the preliminary operations plan is

> "to provide sufficient information to allow the landowner to understand the project's anticipated scope and effect, including habitat objectives and anticipated restoration, management, and O&M requirements, and to allow NRCS to develop a reasonable cost estimate for ranking purposes. This basic information is necessary for both parties to determine whether to proceed in the enrollment process."

*Id*., ¶ 15. The Manual also explains: "if, at this point in the process, the landowner and NRCS cannot come to agreement on the practices and on the management, operation and maintenance activities that will be applied to restore, protect, and maintain the wetland, the process should be ended and the application cancelled…" *Id*., ¶ 16.

After Plaintiffs enrolled in the program, employees of the NCRS repeatedly assured Plaintiffs that they would be allowed meaningful participation in the restoration and management activities of the Easement. *Id*., ¶ 34. Despite repeatedly expressing their concerns over the lack of a preliminary operations plan, Plaintiffs were never presented with a preliminary plan. *Id*., ¶ ¶ 40-41, 44.

Sometime after enrolling in the WRP, NRCS employees provided Plaintiffs with a draft of the Easement. The draft Easement included a blank form "Exhibit D" that outlined water uses and water rights that could be reserved to landowners. *Id*., ¶ 35. Plaintiffs repeatedly informed employees of NRCS of their intent to reserve water rights. *Id*.,¶ 37. In each conversation, NRCS representatives informed Plaintiffs that Exhibit D did not apply and that the NRCS "did not do Exhibit Ds." *Id*., ¶ 38. Plaintiffs were told that their concerns regarding water use rights would be addressed through a compatible use agreement that would be developed after the closing on the Easement. *Id*. Later, NRCS representatives told Plaintiffs that compatible use agreements are

6

only developed after the restoration work has been completed and that Plaintiffs' water use rights would be worked out at that time. *Id*., ¶ 39.

Despite the NRCS's failure to follow its own procedures, around August 28, 2013, David and Maria Rauterkus signed the Warranty Easement Deed in Perpetuity. ECF No. 39-1, pages 1-19. The Rauterkuses granted the NRCS of the U.S. Department of Agriculture an easement, the purpose of which was "to restore, protect, manage, maintain, and enhance the functional values of wetlands and other lands, and for the conservation of natural values including fish and wildlife and their habitat, water quality improvement, flood water retention, groundwater recharge, open space, aesthetic values, and environmental education." *Id*. The Easement explains that "[i]t is the intent of NRCS to give the Landowner the opportunity to participate in the restoration and management activities on the easement area. By signing this deed, the Landowner agrees to the restoration of the Easement Area and grants the right to carry out such restoration to the United States." *Id*. The Rauterkuses received $140,763.00 in exchange for the Easement and the Easement Deed is recorded at the Crawford County Recorder of Deeds. *Id*.

After the Easement deed was signed and recorded, differences arose between the parties as to the type and scope of conservation activities to occur on the property. Following the inability of the parties to reach an agreement on a conservation plan, the government began to implement its own proposed plan. *Id*.,¶ 57. Plaintiffs believe that the NRCS has not provided them with meaningful participation in the planning, design, or management. *Id.,* ¶ 67. The filing of this lawsuit followed.[5]

---

[5] Plaintiffs do not specify what relief they seek under each claim. Instead, they seek relief generally on all claims. Plaintiffs request, among other things, that this Court:

- Declare that Defendants' actions violated the Wetlands Reserve Program, its implementing regulations and policies, and the NRCS' internal manual and operating procedures;

7

### IV. Defendants' Motion to Dismiss

Defendants move to dismiss all counts of the Amended Complaint. Each of Plaintiffs' legal claims will be addressed in turn.

### A. Counts I and II – the Administrative Procedure Act Claims

Plaintiffs raise two legal claims under the APA, 5 U.S.C. § 706(2)(A) and (D). Plaintiffs posit that Defendants violated the APA because they failed to follow the procedural guidelines of their agency and/or their "actions were arbitrary, capricious, [or] an abuse of discretion":

> (i) by not providing an agreeable preliminary WRPO;
>
> (ii) by failing to reach an agreement on a restoration plan;
>
> (iii) by failing to afford Plaintiffs a meaningful opportunity to participate in the development of its proposed conservation for the Land;
>
> (iv) falsely misrepresenting that a preliminary WRPO did not need to be agreed upon prior to entering the Easement; and
>
> (v) falsely misrepresenting that Plaintiffs would have a meaningful opportunity to participate in the development of a conservation for the Land.

---

- Vacate and set aside Defendants' actions;

- Declare that Plaintiffs are the rightful, record owners of the Land;

- Quieting title in the Land by finding that the interest of the United States under the Easement was unlawfully created; and

- Permanently enjoining the NRCS from implementing its proposed restoration plan or prohibiting the proposed restoration plan until such time as the NRCS has demonstrated compliance with the Wetlands Reserve Program and Plaintiffs have assented to a WRPO.

ECF No. 39, pages 14-15.

8

ECF No. 39, ¶ 76 (Count I – § 706(2)(D)) and ¶ 85 (Count II – § 706(2)(A)).

Defendants move to dismiss these claims based on lack of jurisdiction. Generally, "the United States cannot be sued without the consent of Congress."[6] *Block v. North Dakota*, 461 U.S. 273, 287 (1983). The Supreme Court has left no doubt that federal courts lack subject matter jurisdiction when sovereign immunity has not been waived. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature. Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit."); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). *See also Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 395 (3d Cir. 2012) ("Without a waiver of sovereign immunity, a court is without subject matter jurisdiction.").

The Administrative Procedure Act explicitly grants a private right of action to enforce federal rights against federal agencies. 5 U.S.C. § 702. The United States "has expressly waived sovereign immunity through the Administrative Procedure Act for any action for nonmonetary relief brought against the United States." *Ramos v. Raritan Valley Habitat for Humanity*, 2019 WL 4316575, at * 5 (D. N.J. Sept. 12, 2019) *citing Peet v. Sidney*, 2019 WL 542939, at * 3 (D. Minn. Jan. 24, 2019). However, the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, provides the exclusive source of the court's jurisdiction when other legal claims, such as APA claims, are

---

[6] "A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Twin Grocery v. Deegan*, 2017 WL 2362410, at *4 (E.D. Pa. 2017) *quoting Block*, 461 U.S. at 287.

9

intertwined with title claims. *Block*, 461 U.S. 273 (barring APA claims).[7] In *Block,* the Supreme Court expressly held: "Congress intended the QTA to provide the exclusive procedure by which a claimant can judicially challenge the title of the United States to real property." *Id*. at 276.

As pointed out in this Court's opinion denying the preliminary injunction, Plaintiffs' reliance on *Duhring Res. Co. v. United States Forest Service*, 2009 WL 586429, at *7 (W.D. Pa. Mar. 6, 2009) is misplaced. In *Duhring*, Judge Lancaster held that the QTA was not the exclusive source of the court's jurisdiction where "the true nature of Duhring's dispute with the USFS is not regarding ownership of an easement, but rather, the conditions under which Duhring may develop its [oil, gas and mineral] rights." The holding is *Duhring* is inapposite here as Plaintiffs specifically seek to have themselves declared the rightful record owners of the land and to quiet title in the land "by finding that the interest of the United States under the Easement was unlawfully created." ECF No. 39, pages 14-15.

For these reasons, this Court has no jurisdiction over Plaintiffs' APA claims and they will be dismissed.

---

[7] *See also United States v. Mottaz*, 476 U.S. 834 (1986) (barring General Allotment Act claim); *Governor of Kansas v. Kempthorne*, 516 F.3d 833, 842 (10th Cir. Jan. 30, 2008) (holding that an APA suit alleging that a governmental decision is arbitrary and capricious can be "a quiet title action sufficient to invoke the Quiet Title Act."); *Sawtooth Mountain Ranch LLC v. United States Forest Service*, 2019 WL 2477608, at *6 (D.Idaho Jun. 13, 2019) ("If the Court finds the QTA applies, *Block* prohibits a party from seeking to subvert the limitations in the QTA by basing preliminary injunctive relief on the APA …"); *N. New Mexicans Protecting Land Water and Rights v. United States*, 161 F. Supp. 3d 1020, 1052 (D.N.M. Jan.30, 2016) ("The Quiet Title Act provides the exclusive means for litigating title disputes against the United States."); *City of Tombstone v. United States*, 2012 WL 12842257, at *3 (D.Ariz. May 14, 2012) (denying the plaintiff's attempt "to subvert the limitations in the QTA by basing preliminary injunctive relief on the APA and Tenth Amendment.").

### B. Count III – the Quiet Title Act Claim against the United States[8]

At this Count, Plaintiffs dispute the validity of the Easement and they seek to quiet title because they allege "that the interest claimed by the U.S. was never properly granted to it due to the failure to follow the proper procedure required by law, including without limitation, (i) by not providing an agreeable preliminary WRPO; (ii) by failing to reach an agreement on a restoration plan; and (iii) by failing to afford Plaintiffs a meaningful opportunity to participate in the development of its proposed conservation for the Land." ECF No. 39, ¶ 93. The United States moves to dismiss this Count for failure to state a claim. ECF No. 47.

The Quiet Title Act, 28 U.S.C. § 2409a, provides a limited waiver of sovereign immunity for actions to quiet title against the United States: "The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." *Id*., § 2409a(a). *See also Larson v. United States*, 2014 WL 12539647, at * 6 (D.Neb. Jul. 28, 2014) *quoting Block*, 461 U.S. at 275-76 ("[T]he United States, subject to certain exceptions, has waived its sovereign immunity and has permitted plaintiffs to name it as a party defendant in civil actions to adjudicate title disputes involving real property in which the United States claims an interest.").[9]

Plaintiffs dispute the validity of the Easement on two bases. First, they argue that no agreement between Plaintiffs and Defendants was reached in entering the Easement because no

---

[8] The only proper defendant in an action under the QTA is the United States. 28 U.S.C. § 2409a.

[9] Because the Quiet Title Act represents a limited waiver of the sovereign immunity of the United States, the Act "must be strictly construed in favor of the United States." *Porter v. Samuel*, 889 F. Supp. 213, 300 (D.V.I. Apr. 19, 1995) *citing Shultz v. Department of Army*, 886 F.2d 1157, 1159 (9th Cir. Sept. 28, 1989).

11

**preliminary WRPO** was agreed to between the parties. ECF No. 39, ¶ 91.This argument is easily set aside. The lack of a preliminary WRPO before the Easement was finalized, while it may not be in accordance with the WRP Manual[10], does not invalidate the Easement. Plaintiffs do not and cannot argue that the agency's requirement of a preliminary WRPO was unknown to them. Indeed, Plaintiffs allege that they repeatedly requested a preliminary WRPO from NRCS officials prior to closing on the Easement. *Id.*, ¶¶ 40-42, 44. Yet even without the preliminary operations plan to which they knew they were entitled, Plaintiffs proceeded with the enrollment process and finalized the Easement granting property rights to the government in return for monetary compensation of over $140,000.00. to now come to this Court and request that the deed be nullified based on the lack of a preliminary WRPO, knowing it had not been given them before they finalized the deed, is disingenuous. Nevertheless, as it is not a legal prerequisite to the conveyance of the easement, the argument fails.

Next, Plaintiffs challenge the validity of the Easement because of later differences of opinion as to a restoration plan. ECF No. 39, ¶ 92. A written easement deed is interpreted according to contract law principles. *See Top of Hill Plaza Partners, LP v. Hayden Holdings, Ltd., SpA,* 2020 WL 2042934, at * 4 (Pa. Super. 2020) *citing Bito Bucks in Potter, Inc. v. Nat. Fuel Gas Supply Corp.,* 449 A.2d 652, 653 (Pa. Super. 1982) ("the same rules of construction apply to deeds granting easements as to contracts generally."). Pennsylvania courts have been clear that when construing a deed, a court must look to the plain language of the deed itself:

> "First, it is the intention of the parties at the time of entering in [to the easement] that governs, and such intention is to be gathered from a reading of the entire contract. In addition, '[c]ontracts must receive a reasonable interpretation,

---

[10] The preliminary WRPO is intended to provide "the prospective parties to the easement with information that would 'allow the landowner to understand the project's anticipated scope and effect' and would 'allow NRCS to develop a reasonable cost estimate for ranking purposes.'" *Landgraf v. United States*, 151 Fed. Cl. 326, 333 (2020) *quoting* WRP Manual § 514.44(B)(2)(i).

12

> according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language…'"

*Top of the Hill Plaza*, 2020 WL 2042934, at *5, *quoting Wilkes-Barre Twp. Sch. Dist. v. Corgan*, 170 A.2d 97, 98 (Pa. 1961).

The Commonwealth Court has summarized the rules of construction when examining an unambiguous deed:

> "'In the absence of fraud, accident, or mistake, the nature and quantity of the real estate interest conveyed must be ascertained from the deed itself and cannot be shown by parol [evidence]. When the language of the deed is clear and free from ambiguity, the intent of the parties must be determined from the language of the deed. With respect to unambiguous deeds, a court must ascertain what is the meaning of the words used, not what may have been intended by the parties as shown by parol [evidence]. To permit a variation of a deed description which is complete and unambiguous on its face, there must be evidence of a mutual mistake which is clear, precise and convincing.'"

*O'Layer McCready v. Dep't of Community and Econ. Development*, 204 A.3d 1009, 1016 (Common. Ct. 2019) *quoting Pennsylvania Elec. Co. v. Waltman*, 670 A.2d 1165, 1169 (1995).

Here, the stated purpose of the conveyance was "to restore, protect, manage, maintain, and enhance the functional values of wetlands and other lands, and for the conservation of natural values including fish and wildlife and their habitat, water quality improvement, flood water retention, groundwater recharge, open space, aesthetic values, and environmental education." ECF No. 39-1, pages 1-19. The text of the Easement explains that "[i]t is the intent of NRCS to give the Landowner the opportunity to participate in the restoration and management activities on the easement area. By signing this deed, the Landowner agrees to the restoration of the Easement Area and grants the right to carry out such restoration to the United States." *Id*.

The Deed reserves "… to the landowner only those rights, titles and interests expressly enumerated in Part Two, it is the contention of the landowner to convey and relinquish any and all other property rights not so reserved." *Id*. In Part Two, the Easement Deed makes several

13

Reservations to the Landowner, including Title, Quiet Enjoyment, Control of Access, Recreational Uses, Subsurface Resources, and Water Uses and Water Rights. *Id.*[11] The Easement Deed also contains a clause stipulating that ambiguities shall be construed in favor of the United States: "Any ambiguity in this easement deed shall be construed in favor of the United States to effect the wetlands and conservation purposes for which this easement deed is being acquired." *Id*.

Plaintiffs urge this Court to construe the "the opportunity to participate" language as ambiguous and then to look beyond the four corners of the Easement Deed to parol evidence regarding the circumstances surrounding the nature of the transaction between the parties. Plaintiffs argue that the challenged language could mean "a meaningful process in which the parties collaborate on all steps and reach mutual provisions based on a good faith back-and-forth," especially to people who have maintained their property as a wildlife refuse and sanctuary for decades. ECF No. 50, page 14-15.

This Court need not (and cannot) look to parol evidence as the terms of the Easement Deed are not ambiguous. Opportunity to participate is a chance or possibility to contribute to the discussions surrounding the conservation plan. It is not a veto over the conservation plan. *See, for example, United States v. Murray*, 2020 WL 2557945, at *9 (D. Montana 2020)

---

[11] The Easement Deed states that the Landowner reserves Subsurface Resources only to the extent that the terms and conditions are listed in EXHIBIT C and appended to and made a part of the Easement Deed. The Landowner also reserves water uses and water rights "identified as reserved to the Landowner in EXHIBIT D which is appended to and made a part of this easement deed, if applicable." ECF No. 39-1, pages 3, 8. Both the Subsurface and Water Rights sections reference exhibits "if applicable." Neither an Exhibit C or Exhibit D is attached to the Easement Deed recorded in the Crawford County Recorder of Deeds.

("opportunity to participate" language does not "convey[] any right to the servient landowner to determine management direction").[12]

Defendants' motion to dismiss will be granted as Plaintiffs have failed to state a claim under the Quiet Title Act.

### C. Count IV – the Anticipatory Trespass Claim

Plaintiffs' trespass claim stems from Defendants' anticipated and intentional "elevation of the groundwater under and around Plaintiffs' property, damaging Plaintiffs' property and preventing Plaintiffs from use and enjoyment" of it. ECF No. 39, ¶ 95.

Trespass is a strict liability tort, "both exceptionally simple and exceptionally rigorous." *Boring v. Google, Inc.*, 362 Fed. App'x 273, 281 (3d Cir. Jan. 28, 2010) *quoting Prosser on Torts* at 63 (West, 4th ed.1971). Under Pennsylvania law, trespass is defined as an "unprivileged, intentional intrusion upon land in possession of another." *Id. citing Graham Oil Co. v. BP Oil Co.*, 885 F. Supp. 716, 725 (W.D. Pa. Sept. 1, 1994). One "who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest." *Id.* at 281, *quoting* Restatement (Second) of Torts § 163.

As discussed above, when other legal claims are intertwined with legal claims under the QTA, the QTA provides the exclusive source of the court's jurisdiction and the QTA's waiver of

---

[12] Moreover, the testimony at the preliminary injunction hearing revealed that there was significant back-and-forth discussions between NCRS officials and the Rauterkuses. *See* ECF No. 35; ECF No. 36.

15

sovereign immunity must be construed in favor of the United States. *See Block*, 461 U.S. 273.[13] Here, Plaintiffs' claim of trespass involves a dispute between the Rauterkuses and the United States over the title to real property and so is subject to the requirements of the QTA. This claim will be dismissed for lack of jurisdiction for the reasons discussed above.

   An appropriate Order follows this Memorandum Opinion.[14]

---

[13] *See also supra* at note 7.

[14] While Plaintiffs mention the Federal Tort Claims Act in the amended complaint, they have not pled an FTCA claim.